May it please the Court, my name is Brian Koenig. I represent Energy Consulting & Management Solutions, LLC. I'd like to reserve two minutes for rebuttal. This case is about a debtor in bankruptcy transferring rights to a deposit in the amount of approximately $1 million to a liquidating trust. Energy Consulting contends that the debtor's rights to the $1 million deposit were transferred to the liquidating trust as part of a modified Third Amendment Joint Chapter 11 Plan of Reorganization, which clearly provided that all of the debtor's assets, which would include any causes of actions attendant to that purchase order, were transferred to the liquidating trust to be administered for the benefit of the debtor's creditors. The fundamental error underlying the District Court's ruling is that a cause of action based upon an executory contract that is not assumed under 11 U.S.C. section 365F does not exist. The District Court made the incorrect assumption in ruling that without an assumption, an assumption of the executory contract under 11 U.S.C. section 365F, there are no rights for which to be assigned. Judge Gould in the OneCast media decision determined otherwise. In that case, it was quite clear that rights attendant to an executory contract exist, and those rights can be transferred, be it to a Chapter 7 trustee or a liquidating trustee, for those to be administered for the benefit of the creditors of the estate. But counsel, even if that's right, isn't the question in this case whether they were transferred? I think you're correct. As opposed to whether they could have been? Yes. Okay. Yes. And certainly, we respectively contend that they were, in fact, transferred by virtue of that third, a modified Third Amendment Joint Chapter 11 plan. Okay. So if you look at the plan, are you relying on the language that you just referenced in your very first, just about your first sentence, that, you know, all means all, all the assets? Okay. That is correct. And, of course, opposing counsel is going to get up and tell us about a provision that he thinks is more specific. So do you want to turn to that? I will address that. What's your strongest argument that that's not? Section 2.4, I believe, is what you're referencing with respect to opposing counsel's argument. Section 2.4 actually means, and I've seen this in numerous liquidating plans, I've seen these across the country, these are quite regularly done across the country, that you cannot obtain all rights in an executory contract as if it had not been breached and assign those rights, assign that contract as if it had not been breached. So you stand in the shoes of the debtor. Exactly. And if the debtor breached, then what you're getting, essentially. What you're getting is whatever rights the debtor had. And so here the debtor had clearly breached, and if not, the debtor, by virtue of rejecting the contract, had breached. And so whatever the debtor had at that time is what my client, Energy Consulting, purchased and what the liquidating trustee obtained through the transfer of those rights. My client and the liquidating trustee do not contend that there was an assignment of the purchase order in a form that would be without a breach. Okay. So that would mean, in this case, that if there's mitigation owed to Western states, that you would take subject to that? We would take subject, yes. Okay. Yes, certainly. To the extent that they mitigated their damages in a commercially reasonable manner, our claim would need to be deducted from that. What's your strongest support for that authority, that what 2.4 means is what you've just described? I think 11 U.S.C. section 365 F, 2, subsection 2, which provides that in the case of an assumption of an executory contract, so long as the executory contract is assumed and adequate performance, assurances of adequate performance are provided, then the breach is as if it never occurred, and all of the rights in that contract are then transferred to either the debtor either holds all of those rights or the assignee of the debtor would hold all of the rights in that contract. Here, it is clear that the breach was not cured, nor were adequate assurances of future performance provided, and so it is certainly clear that there was no assumption and assignment pursuant to 11 U.S.C. 365 F, 2. Right. So it gets back to the question, though, it's like, was it ever assumed? That's sort of the dead end we keep hitting. Well, you don't need it to be assumed. It does not need to be assumed for rights attendant to it to be transferred. That's the whole issue here, in my opinion. A contract that has rights that are attendant to it does not need to be assumed in order to be assigned. Okay. I guess sort of getting back to the basics, who assigned them to your client? The liquidating trustee. Right, and so the liquidating trustee has to receive those rights. So where is it in the record that the trustee received those rights attendant to the breach contract? I think it all comes back to the... 2.4. Well, no, no, 2.4. 2.4 is a very specific provision that is meant to only relate to 11 U.S.C. 365 F, 2. So you're relying on 2.2. That's where the any and all property of the debtor. Yes, any and all property of the debtor was certainly provided to the liquidating trust. There was no reservation of any rights. I mean, there's certainly a cause of action here that was attendant to this executory contract. That just doesn't go poof when everything was transferred to the liquidating trust. The debtor did not want to retain any rights in that, did not want to retain any property whatsoever. If you look at the plan as a whole and you look at the disclosure statement as a whole, it's clear that the debtor and that the parties who are formulating the liquidating plan are intending to transfer every single asset of the debtor to the liquidating trust. Okay, so then how do we read 2.4? 2.4 merely means in the case that there was an assumption, an assignment, meaning what it is is a standard provision that wasn't deleted that should have been. Okay, but it's there. It is there. And so we have to give it meaning. We can't ignore it. Yes, I understand. And the specific controls over the general, right? So you have this general language saying all debt is assumed. And then you have 2.4 that said except for. Well, if 2.4 means what you think it means, then the debtor would have retained property rights. Certainly that is not the intention of the drafters of the plan and the committee who were the proponents of that plan. They wanted every single asset of that debtor to be transferred to the liquidating trust. That is perfectly clear from an overall reading of these documents. Well, except we would – oh, forgive me. I'm sorry. I thought you were done. Please finish. No, the disclosure statement, if you read the disclosure statement and you read the liquidating plan in full, it is perfectly evident that every single asset that the debtor owns at that moment was to be transferred to the liquidating trust. So it sounds like your position in response to Judge Kobayashi's question really is that 2.4, which says that the liquidating trust forbids assignment of executory contracts not listed on a particular schedule, and I think you're going to concede in a minute that there was a schedule and there was one contract listed and this wasn't it. Yes. Right, okay. So even though there's this expressed language that the liquidating trust forbids assignment of executory contracts except the listed ones, it sounds like your position is that 2.4 is a provision that does not support your client but that this provision is boilerplate and it ought not to have appeared in the contract. It probably ought not have appeared in the liquidating trust in the first instance. This was some poor drafting. This is certainly true. Okay. So what do we do with it, though, because it's expressly there? Well, because I think you can find that an assumption in assignment under 1165 or 11 U.S.C. 365 F2 is a specific method to transfer property. Just because it exists does not mean that you have to say that if it wasn't completed in that method, that no other rights can be transferred. So how could it be completed? What other methods should they rely upon? Well, the any and all language in the Section 2.2 includes all assets of the debtor. Right. So merely 2.4 is more specific, but it is meant to only arise in the situation where a debtor wants to transfer or an assignee wants to receive the benefits of the contract in such a manner where there's no breach, that the breach had been cured, and that they could proceed with the contract as if no breach had ever occurred. So that's why Section 2.4 is in that liquidating trust. It allows for a party to obtain the rights as if no breach had ever occurred. Okay. So help me understand with regard to the general provision about all of the property being transferred. Yes. This is an executory contract? I think we all agree? Yes. All right. So what property rights at that point when it's breached does the debtor have to transfer? The debtor has whatever rights to recover the deposit that would exist under Idaho law, particularly the UCC, the restitution statute. Section 718 of the Uniform Commercial Code allows for a party to recover deposits to the extent that the holder of the deposit did not incur damages. If he'd mitigated. If he'd mitigated. And, in fact, I think your client purchased this, whatever it was he thought he purchased, his intent was to request performance of the contract, right, originally? I think he would ask for a request for performance. I think he may have known that he was maybe not entitled to request performance as if it had been cured under 11 U.S.C. Section 365-F2. Well, whether there would have been a mitigating number there, damages they had incurred or not, had it been transferred there certainly would have been various options available to your client, right? Yes. That's the, you're right. Okay. I see I'm cutting close to my rebuttal time. If there are no more questions I'd like to reserve the remaining time. Thank you. Thank you. May it please the Court, my name is Brian Julian. I represent Western States Equipment Company. I'm from Boise, Idaho. It's nice to present this today. You'll have to say hi to Judge Smith when you get back to Idaho. Oh, yes. Very good friend of mine. I think this is actually more straightforward than the briefing would suggest. I've been up half the night, probably because it was my first night in a hotel and I never sleep anyway, reading everything, and I ended up getting more and more confused until I read Judge Lodge's opinion again. And I just thought he handled it appropriately of taking what could be a very complex situation and finding a pretty good solution for it. And the facts are pretty important because we use terms like deposits and start throwing in UCC code sections about liquidated damages, none of which really apply here. I think it's more of a progress payment. In 2007, Western States made an agreement to sell two generators, unique generators, not generators that you'll find at the Ford Motor Company dealership, but specifically made and very expensive and actually even unique in the field of ethanol, where they were low-voltage generators. They couldn't be sold on the market very easily. Very, very unique to this situation. It was clear that 10% was going to be down payment. And then even under the purchase order, which actually the purchaser created, Renovo, it was their document that said you have up until this point until the cancellation window closes. And my client had to pay for it. So when we talked about, oh, we'd like to get our million dollars back because we bought an assignment of $55,000 and let's gamble a little bit and make that turn into a million dollars, the million dollars isn't there. My client got $1,050,000 from Renovo and spent $1,080,000 to purchase the equipment. But are you claiming your client was damaged? My client was clearly damaged at that point. At that point? At that point. This isn't about your client having been damaged, right? That's not what we're talking about. No, but what I'm saying is it's not a classic deposit that is sitting there where we're giving it back. We spent the money due to their – on their reliance that they're going to purchase this equipment from us. Not only did we do that, we spent another $280,000 for the project with switching gear, for engineering, for real property improvements. And so we're into this estimated $1.5 million. Now, I would say they would have a claim, perhaps, if instead of $2 million, we could only sell this for $400,000 for two generators, and it took two and a half years to get one offer on these things. And there's reasons for that. It was going to take a lot of money, hundreds of thousands of dollars to convert these. But if we had sold this for $3 million and we already had their $1 million down, yeah, I can understand an unjust enrichment claim, perhaps, is that you're getting it above your profit level. We never got to that point. My client still lost $600,000. So where they're coming back and asking for this is, in my mind, at least questionable. But whether that is true or not on your end – and I don't mean to minimize it, and I understand this is a very unique piece of equipment and tough to mitigate. I'm sure your client was scrambling. But going back to this document, what's the response, which I did not understand from the pleading, that Section 2.4 mistakenly appeared in the liquidating trust document? I don't understand that at all. It seems to be controlling what goes into the liquidating trust. Was that argued below, sir? What's that? Was that argument made below? No. No, it was a mistake put in there? Absolutely not. It was argued after summary judgment that the party's intent was different. I think it was amended when this was submitted on the record. But I don't even know where we get into party's intent. It's like any other contract or any other document. The clear language of this says, all executory contracts and unexpired leases not included in the contract assumption schedule shall not be assigned, conveyed, set over, or delivered to the trust. Now, if anyone can find an ambiguity in there, you're doing better than I can. That is pretty clear, pretty specific. But it's not only that. It's also followed up on Section 3.3 of the plan, which is found in the excerpts of Record 177. And it states that all of the liquidating interests, rights, and obligations under each and every executory contract and unexpired lease to which the REID is a party, and is more specifically set forth on the contract assumption schedule, shall be irrevocably transferred, absolutely assigned, conveyed, set over, and delivered to the liquidating trust with the requirement, obligation, or duty to satisfy, fulfill, or abide by the provisions of 11 U.S.C. 365, including without limitation the need to cure any monetary or non-monetary defaults or provide adequate assurance of future performance of the project contracts. So if it's a mistake, it's certainly put in there a couple times. And it seems to be that if you're going to assume this contract, if a debtor is at some point, you have to bring it current. You have to make some type of commitment that we're going to see this. My client, by selling to Renovo, shouldn't have to take a million-dollar hit on this. They should be protected. This wasn't even listed. As the court found, my client was never listed as a debtor. In fact, they probably would have been the biggest one out there, or as a creditor. They would have been on the committee to run things. They were never listed on the contracts, to be assumed. Counsel, could I ask you to address the attorney's fees argument? I'm not sure that's been covered yet. Sure. The attorney's fees were granted under two sections of Idaho law, Idaho Code 12-121, which is the case law is it's going to be a discretionary call, but, of course, this court reviews all decisions like that de novo. The court basically ruled that based on the clear language of this, you guys, I mean, I hate to be too faulty here, but you bought a pig and a poke. You didn't buy anything. Let me ask you a fact question about that. Did the receiver sell something to Energy Consulting that it didn't have? In my opinion, yes. But with every disclosure they could possibly do. I mean, it is as is, where is, without any warranty, without any representation, you take your chances on what this is. But, yeah, and they even told the purchaser, we understand this equipment is under sale. They've already sold it. Take your chances here. But why is it a frivolous claim, then, to follow up on Judge Gould's point, if even the receiver thought there was something there to sell? I think it's what the, well, I don't think the subjective intent of the receiver comes into play. I think Judge Lodge is saying, objectively, by a quick review of this, you can simply look at the contract listing, the schedules. It's not listed. It was never assumed. The statutory obligations to guarantee performance of this executive contract were never made. But as a backup to that, though, there's another Idaho statute that probably makes it much easier, and that is if this, if the grab-a-man of this is a commercial transaction, then under Idaho Code 12-120, it is no longer even a discretionary call on whether an attorney's fees should be awarded. It's mandatory. And the defense to that is, well, we weren't part of the commercial transaction. RENOVO was. That's their defense to that. And, of course, this is really an interesting case as far as what you get with an assignment, because the black-letter law is you get the same rights and obligations as what the ASINOR had. Isn't there other defense to Idaho Code Section 12-120, that your client requested fees under Idaho Code Section 12-121? Isn't that his other argument? I think it was. I didn't quite understand it because I really didn't think it mattered, because at the time this was briefed on the attorney's fees, both code sections were briefed to the judge, and the judge decided on both. But we clearly, under no displeasing, asked for attorney's fees. I don't know if – Do you think your motion cited both provisions? I don't even know if we have to. I don't know of any specific rule that says anything that we were going to seek attorney's fees is allowed by Idaho law. Certainly, I'm unaware of any case that has banned attorney's fees when you have basically asked for them generally no displeasing. If they wanted to send me an interrogatory and say what statutes are you relying on, sure they could. Let me ask you a practical question. You've got two sophisticated companies and good lawyers. Did the parties ever sit down and try to mediate in this case? Yes. Would mediation in the Ninth Circuit be of any assistance? I really doubt it. I mean, I will never turn down a mediation. I would always consider it. If you're asking for my opinion, would it be fruitful? No. I think my client feels very strongly that they've almost been victimized in this thing. They sold something in good faith. They weren't even listed in bankruptcy. They didn't even have the opportunity to participate in bankruptcy as being listed as a creditor, and out of the blue they're going to have to defend a lawsuit over this equipment and saying give us our million dollars back or deliver this when, frankly, what we really had here under the law was an anticipatory repudiation. We cite to some UCC provision, which I think deals with liquidated damages, and those must be reasonable and, of course, related to general damages. I get that. But what really happens is under Idaho Code 33, I'm sorry, the code section is just the UCC code. It is Article 2.708, anticipatory repudiation. That allows a seller to not only sell equipment to recover their money, it allows them to seek their lost profit as well when the other party says we're not going to abide by this. And let's not forget that before bankruptcy, we were told in January of 2008 don't deliver anything to us. In March of 2008, Renovo, the buyer, said fine, we're going to try to mitigate our loss. We're going to put it on the market. We received absolutely no objection. We heard nothing from them. And then bankruptcy is filed in June of 2008, and we are not listed as a creditor. We're not on any committee. Our contract is not listed as an asset. We are not involved whatsoever until this assignment comes by. But those slights, and I don't want to minimize them, but they weren't, this client isn't responsible for the fact that you weren't listed in bankruptcy, right? No. This client isn't responsible for much of what your client is legitimately complaining about. No. But when they acquire an assignment, they don't just get to take the suite, but they also have to take the bidder. They have to take the fact that this was also a person in default and understand that. They have to accept the notion that Renovo was in breach of contract. And in Idaho, I think as well as virtually every other state, if you're in breach of contract, you don't get to go out and sue for damages. You have to bring it up to speed. In fact, Williston on contracts basically says that the person that causes the breach doesn't then get to come in and claim damages until he has made up for the default here. That's the problem, is that they still have to step in the shoes of the original buyer who is in serious jeopardy. Do you understand him to be taking the position that he doesn't, his client wouldn't step into the shoes of the defaulting party? I think they clearly are saying that implicitly when they're trying to carve out exceptions and say, well, we know that they were in default, and we know it wasn't cured, and we know there was no assurance, but we would still like to acquire some substantive right on the deposits and still sue. My point is you cannot do that. You certainly can't do that under Idaho law, and I don't know of any other state you can do that in. You can't carve out certain causes of action when in the breach contract you're still in breach. So can I ask you a quick question going back to the attorney's fees? On the second ground, the Idaho Code 12-120 sub 3, that requires a commercial transaction or a contract between the parties. Isn't your position that there wasn't any contractual relationship between these two parties? If so, then how do you acquire attorney's fees under this position? And it is cited in our brief, and I apologize I don't have the case listed, but there is an Idaho Supreme Court case that says if a party is alleging that there is a commercial transaction and that there is some type of breach of contract, even though they lose on that, the gravamen of the complaint was still a commercial transaction. In other words, a defendant can beat the cause of action on breach of contract and say, this wasn't even a breach of contract. For example, you may have an employment at will. There's no contract involved. But if the employee alleges there was a contract and they lose on that count, they subjected themselves to attorney's fees under Idaho law simply because they put in to dispute that there was a contract. And that's where we're falling back on is even though we won on this and even though there wasn't an assignment, the general impetus of this entire thing was a commercial transaction, and they acquired those rights from Renovo by way of the so-called assignment. In essence, it remains our position there really was nothing to assign. The language of the trust agreement means what it says. And to read anything else into it is to not read it. Okay. I want to thank you for your argument. I'm afraid that red light means your time's up plus a minute. That's okay. We took a lot of your time with questions. And I appreciate the question. Thank you very much. We appreciate the argument. I want to address first and foremost your question regarding Section 2.4. Section 2.4 of the Liquidating Trust, or the plan, was merely intended to forbid the assignment of executory contracts with the benefits bestowed upon them in 11 U.S.C. 365 F2 that allow an assignee to receive the contract as if no breach had occurred. That's what Section 2.4 forbids. It's quite clear that 11 U.S.C. 365 F2 would allow a party, an assignee of that contract, to act as if no breach had occurred. And so what this provision is doing in that plan is saying, no, no, no, no. You can't act as if no breach had occurred. We can't allow an assignment as if no breach had occurred. That's merely what Section 2.4 of that plan states. So your position is you still take the assets subject to a damage claim? We do. We do. We're just attempting to make sure that they don't receive a windfall. That's all we're doing. I have the same question to you that I put to Mr. Julian about mediation because, of course, we would not force mediation on anybody. At most, we issue an order saying we're going to defer submission for X days in case the parties want to. But as to whether we should even bother with something like that, I wanted to hear from the parties' counsel if there's any reason to do that. Mr. Julian indicates that his client wouldn't be interested in that. I think my client would be. I obviously don't know for certain, but I would suspect that they would be. So that's probably the best I can do to answer that question. Yeah, that's fine. I also want to address a couple of the factual misstatements that were made up here regarding the fact that they were never notified about the bankruptcy. That is quite untrue. They were never listed as a creditor. The allegation has been made a number of times up here. Well, that's untrue. You'll see in the record, supplemental excerpt of record, page 201, that they were listed on the petition. They were listed on the list of creditors. Were they served with notice of the proceeding? How notice is actually served in a bankruptcy is a matrix of creditors is appended to the end of the petition, and their name and their address was appended to the end of the petition. I'm not asking them the right question to ferret out the basis for this other assertion that I'm perhaps reading too much into, that they weren't listed. Can you explain that to me? What's the difference? His distinction is that they aren't on the schedules. They're certainly on the petition itself that included as a list of the assets all the purchase orders that existed. And as part of that petition, there's a creditor's matrix at the very end of that that includes Western states and their address. And so presumably, that's how a certificate of service works in a bankruptcy, and they would have received that petition, and then they could have objected to the fact that they weren't listed on the schedules and been able to then afforded the opportunity to participate in the bankruptcy. However, I suspect what happened is they just disregarded the notice that they received initially and never checked, or if they did check, they just protected it. Well, maybe they received it, maybe they didn't. But I guess you're raising this because from looking at it, your client wouldn't have been unnoticed that they didn't get it. Is that right? You would have thought they did? Yes. Our client firmly believed that they received notice of the petition. I know nothing about how they do things in Idaho. Can you explain to me whether or not your client thought it was buying the list of executory contracts on the schedule, which in this case would have been one, or did it think it was buying this particular contract? It thought it was buying this particular contract, and it thought it was buying the rights attendant to it with respect to the restitution claim in particular. It understood that the UCC code allows for a breaching party to recover restitution damages if the other party had failed to commercially reasonably mitigate its damages, and so it believed that it was receiving those rights. All right. I think Judge Gould is probably getting ready to tell you you're out of time, so before he does, I want to say that I hope I didn't offend you by making my comment about Judge Smith. My firm impression is that he knows everyone in Idaho, and I wouldn't dream of talking to him about this case. No problem. Yes, he does know a lot of lawyers in Idaho. Thank you, Your Honor. Thank you. I think I might know one or two in Omaha too. Okay. We thank you both, and the case of Energy Consulting v. Western States Equipment shall be submitted.
judges: Kobayashi, Gould, Christen